IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW B. CUFAUDE,

        Plaintiff,

v.

THERAPEUTIC LEVEL OF CARE
COMMITTEE, DR. GARTH GULICK,
DR. BRYON D. HEMPHILL, and SNAKE
RIVER CORRECTIONAL INSTITUTION
HEALTH SERVICES,

        Defendants.

No. 2:22-cv-01604-HZ

OPINION & ORDER

Andrew Benton Cufaude
14511972
Snake River Correctional Institution
777 Stanton Blvd
Ontario, OR 97914-8335

        Plaintiff, *Pro Se*

Natalie M. Fisher
Oregon Department of Justice
Trial Division
1162 Court Street N.E.
Salem, OR 97301

        Attorneys for Defendants

1 - OPINION & ORDER

HERNÁNDEZ, District Judge:

This matter comes before the Court on Defendants' Motion for Summary Judgment, ECF 23. For the reasons that follow, the Court grants Defendants' Motion.

## BACKGROUND

Plaintiff Andrew Cufaude is an adult in the custody ("AIC") of the Oregon Department of Corrections ("ODOC") and has been housed at Snake River Correctional Institution ("SRCI") since July 7, 2010.

On October 20, 2022, Plaintiff filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983 in which he alleges the SRCI Therapeutic Level of Care Committee ("TLCC"), Dr. Garth Gulik, Dr. Byron Hemphill, and SRCI Health Services violated his Eighth Amendment rights when they failed to provide him with adequate medical treatment for his back pain and a kidney cyst. Plaintiff seeks damages and injunctive relief of (1) "correct pain medication"; (2) restrictions on lifting, bending, climbing, standing, walking, and hearing; (3) a cane and bottom bunk; and (4) "another . . . CT Scan/MRI or kidney surgery."

On August 22, 2023, Defendants filed a Motion for Summary Judgment. The Court took Defendants' Motion under advisement on November 1, 2023.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendants assert they are entitled to summary judgment on the grounds that (1) Plaintiff's claims against SRCI Health Services and the TLCC are barred by the Eleventh Amendment, (2) Plaintiff's claims against Drs. Gulik and Hemphill brought in their official capacity are barred by the Eleventh Amendment, and (3) Plaintiff fails to establish deliberate indifference in violation of the Eighth Amendment.

I.  **Eleventh Amendment**

The Eleventh Amendment generally bars a citizen from suing a state in federal court. *See Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001); *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669-70 (1999). Supreme Court precedent establishes that a state is immune from suit in federal court unless Congress has abrogated the state's immunity by appropriate federal legislation or the state itself has waived it. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011). State sovereign immunity proscribes federal suits against state agencies and departments, which are arms of the state. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003)("It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits ... in federal court."). "State prisons are considered state agencies for purposes of the Eleventh Amendment." *Gosney v. Oregon Dep't of Corr.*, No. 6:21-CV-1511-SI, 2022 WL 959228, at *2 (D. Or. Mar. 30, 2022)(citing *Allison v. California Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969)).

Individual defendants who are sued in their official capacities are protected by Eleventh Amendment immunity to the extent that plaintiffs seek damages. *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 989 (9th Cir. 2014)("'Eleventh Amendment immunity extends to actions against state officers sued in their official capacities because such actions are, in essence, actions against the governmental entity[.]'")(quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982)). *See also Lujan v. Oregon Dep't of Corr.*, No. 2:17-CV-01726-JO, 2019 WL 1460867, at *3 (D. Or. Apr. 2, 2019("While defendants are correct that monetary relief would not be available to [the plaintiff], the Eleventh Amendment does not bar claims for declaratory

and injunctive relief against individuals in their official capacity.")))(citing *ACS of Fairbanks, Inc. v. GCI Commc'n Corp.*, 321 F.3d 1215, 1217 (9th Cir. 2003).

SRCI Health Services and the TLCC are departments of ODOC, which is an agency of the State of Oregon. The State of Oregon has not waived its sovereign immunity from suit in federal court. SRCI Health Services and the TLCC are, therefore, immune from suit in this court pursuant to the Eleventh Amendment. *See Oien v. Or.*, No. 2:17-CV-00978-HZ, 2018 WL 503259, at *3 (D. Or. Jan. 22, 2018)(granting summary judgment to ODOC and Two Rivers Correctional Institution based on Eleventh Amendment immunity); *see also, Gosney*, 2022 WL 959228, at *2 (dismissing claims against ODOC based on Eleventh Amendment immunity).

In addition, to the extent that Plaintiff sues Drs. Gulik and Hemphill in their official capacity and seeks damages, those claims are also barred by the Eleventh Amendment. *See Sol v. Dep't of Corr.,* No. 2:16-CV-00822-AA, 2017 WL 3429388, at *3 (D. Or. Aug. 8, 2017)("the Eleventh Amendment bars claims for damages against state officials sued in their official capacities")(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

## II. Deliberate Indifference

### A. Standard

Deliberate indifference to the serious medical needs of an AIC is "cruel and unusual punishment" under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). To establish an Eighth Amendment claim, a plaintiff must show he has a "serious medical need" and defendants were "deliberately indifferent" to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]" *Clement v. Gomez,*

298 F.3d 898, 904 (9th Cir. 2002)(internal citations omitted). *See also Jiau v. Tews*, No. 22-15576, 2023 WL 6478885, at *1 (9th Cir. Oct. 5, 2023)(quotation omitted)("To maintain an Eighth Amendment claim based on prison medical treatment, [the plaintiff] must . . . show a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," "a purposeful act or failure to respond to a prisoner's pain or possible medical need," and "harm caused by the indifference."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014)(quotation omitted). "'[A] patient's difference of medical opinion concerning the appropriate course of treatment[, however,] is not sufficient to constitute deliberate indifference.'" *Vazquez v. Conanan*, No. 21-16731, 2023 WL 2624782, at *2 (9th Cir. Mar. 23, 2023)(quoting *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

     **A.**     **Back Pain**

     Plaintiff suffers from moderate chronic degenerative disc disease ("DDD") in his back. Gulik Decl., ECF 25, Ex. 2 at 1. Plaintiff underwent lumbar surgery in 2016 and 2019 to treat his DDD. Plaintiff, however, continued to complain of pain and weakness from his DDD.

     On September 10, 2021, Plaintiff underwent an MRI to evaluate his DDD. The MRI revealed a "[r]ecurrent broad-based left subarticular disc protrusion resulting in left

subarticular recess stenosis" at L4-L5. Gulik Decl., Ex. 2 at 90. There was, however, "[n]o overt neural impingement evident" and it was noted that "this is smaller than the protrusion previously visible in 2018." *Id.* There was at L4-L5 "[m]ild spinal canal narrowing centrally, mild bilateral foraminal narrowing," and a "[m]edium sized broad-based bulge and disc osteophyte complex." *Id.* at L5-S1. The MRI, however, also reflected that there was "[i]nterval resolution of the previous left subarticular disc herniation" at L5-S1 and "[n]o spinal stenosis centrally, mild left foraminal narrowing and mild bilateral subarticular recess narrowing." *Id*. In short, the September 2021 MRI "showed improvement from imaging taken in 2018 before [Plaintiff's] 2019 lumbar spine surgery." Gulik Decl., ¶ 9.

In 2021 Plaintiff received physical therapy, was provided with an ankle foot orthosis ("AFO") to address "foot drop," and was prescribed Cymbalta for back pain.[1] Plaintiff reported in November and December 2021 that Cymbalta was helping with his back pain, but in April 2022 he noted his lower back pain had become "worse lately." Gulik Decl., Ex. 2, at 43, 50-51. Plaintiff requested imaging and different medication: baclofen and norco.[2] On April 22, 2022, Plaintiff had an x-ray of his lumbar spine that reflected "[s]igns of [DDD at] L4-5 and L5-S1," but "no significant interval change" in comparison to a September 2021 x-ray. Gulik Decl., Ex. 2 at 83. Nevertheless, in 2022 and 2023 Plaintiff received a cane and a bottom-bunk restriction.

Plaintiff repeatedly requested a third back surgery, but was advised numerous

---

1 "Cymbalta is a selective serotonin and norepinephrine reuptake inhibitor (SSNRI) that is approved by the Federal Food and Drug Administration (FDA) to treat chronic musculoskeletal pain, such as the chronic pain suffered by" Plaintiff. Gulik Decl., ¶ 11.
2 Baclofen is a muscle relaxer and norco is a combination of hydrocodone and acetaminophen.

7 - OPINION & ORDER

times that there is "no obvious surgical solution" for his DDD. *See, e.g.,* Clements Decl., ECF 24, Ex. 1 at 17; Gulik Decl., Ex. 2, at 217. Plaintiff was briefly prescribed baclofen in April 2022 and July 2022 and norco in July 2022, but on July 27, 2022, the TLCC discontinued those prescriptions on the basis that they are not medically indicated for chronic pain. *Id.* at 157. Plaintiff continued to receive Cymbalta. On January 18, 2023, the TLCC denied Plaintiff's request for baclofen and indicated Plaintiff should be prescribed Trileptal. Clements Decl., Ex. 1 at 17. Plaintiff has been taking Trileptal since January 2023. Clements Decl., ¶ 7; Ex. 1 at 42.

On March 22, 2023, the TLCC denied Plaintiff's request for another MRI of his lumbar spine on the basis that there were no new findings to support another MRI. On May 24, 2023, the TLCC approved physical therapy for evaluation and pain management.

Even viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has not shown that Defendants' actions met the high standard required to establish deliberate indifference. Specifically, Plaintiff does not present evidence that the chosen course of treatment "was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to [his] health." *Toguchi*, 391 F.3d at 1058 (internal quotations and citation omitted). Rather, the record reflects Plaintiff was regularly and repeatedly seen by medical staff; provided with medication, a cane, a lower bunk, and an AFO; received physical therapy; and received numerous x-rays and MRI's of his back. These actions do not reflect conscious disregard of an excessive risk to Plaintiff's health but rather ongoing attention to Plaintiff's condition and symptoms. Although Plaintiff asserts he should have received a third back surgery, the record reflects there was "no obvious surgical solution" for his DDD. *See, e.g.,* Clements Decl., Ex. 1 at 17; Gulik Decl., Ex. 2, at 217. In addition, Plaintiff's belief that he

8 - OPINION & ORDER

should receive different medication for his pain amounts to no more that a difference of opinion, which is insufficient to establish deliberate indifference. *Vazquez*, 2023 WL 2624782, at *2 ("a patient's difference of medical opinion concerning the appropriate course of treatment is not sufficient to constitute deliberate indifference")(quotation omitted).

Although the Court is sympathetic to the distress caused by Plaintiff's ongoing symptoms, the Court finds Defendants provided ongoing, reasonable care and did not act with deliberate indifference.

**II.     Kidney Cyst**

The September 10, 2021, MRI of Plaintiff's lumbar spine detected a five centimeter left renal cyst. "Renal cysts are . . . fairly common, can be benign, and are typically asymptomatic. Diagnostic tests and procedures may include blood tests, urine tests, imaging, or ultrasounds." Gulik Decl., ¶ 14. When renal cysts are "benign in appearance," treatment is "observation." *Id*. When cysts show "signs of possible cancer," treatment is "biopsy or removal." *Id.* Plaintiff requested surgery to remove the cyst, but the TLCC denied his request on December 29, 2021 on that basis that there was "no support for surgery." Gulik Decl., Ex. 2 at 225. The TLCC, however, ordered a "CAT scan with contrast" to look at the cyst. *Id.* A renal ultrasound was conducted on March 16, 2022, and reflected "[a] simple appearing 5 cm cyst within the left renal lower pole cortex." *Id*. at 86. The ultrasound "showed no significant growth and no noted abnormalities, with no signs of nephrolithiasis or hydronephrosis." Gulik Decl., ¶ 16. "Surgical intervention was not medically indicated [and] the renal cyst appears to be benign." *Id.* Dr. Gulik testifies that medical staff will continue to observe Plaintiff's cyst.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that

Plaintiff has not shown that Defendants' actions met the high standard required to establish deliberate indifference with respect to his renal cyst. Specifically, Plaintiff does not present evidence that the chosen course of treatment "was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to [his] health." *Toguchi*, 391 F.3d at 1058 (internal quotations and citation omitted). In fact the record reflects the cyst is likely benign, it did not increase in size between the December 2021 MRI and the March 2022 ultrasound, and observation rather than surgery is the medically reasonable approach under the circumstances.

## CONCLUSION

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment, ECF 23.

IT IS SO ORDERED.

DATED: _____December 1, 2023_____

_____
MARCO A. HERNÁNDEZ
United States District Judge